110 N.J. Super. 424 (1970)
265 A.2d 847
RUTGERS, THE STATE UNIVERSITY, PLAINTIFF,
v.
GEORGE F. KUGLER, JR., ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided May 25, 1970.
*425 Mr. Clyde Szuch, for the plaintiff (Messrs Pitney, Hardin & Kipp, attorneys).
Mr. Fred R. Gruen, Deputy Attorney General, for the defendant (Mr. Stephen G. Weiss, Assistant Attorney General, of counsel).
BROWN, R.C., J.S.C.
This is a declaratory judgment suit instituted by Rutgers, the State University (hereinafter Rutgers) against the Attorney General of New Jersey seeking a determination that it is not bound by (a) the provisions of N.J.S.A. 52:32-2, which requires the letting of multiple contracts in connection with the construction of public buildings; (b) the provisions of N.J.S.A. 52:35-1 et seq., which requires the prequalification of bidders on such construction projects, and (c) the provisions of N.J.S.A. 52:34-6 et seq., which requires public bidding.
The Attorney General contends that each of these statutes applies to Rutgers and seeks a judgment that the University comply with them.
The case is now before the court on cross-motions for summary judgment.
In order to thoroughly understand the present problem and to aid the court in determining the applicability of these statutes a review of the history of Rutgers and the events leading up to the adoption of the Rutgers, the State University Law, L. 1956, c. 61, N.J.S.A. 18A:65-1 et seq., is necessary. Such a history, up to 1956, is fully incorporated in the opinion of Judge (now Justice) Schettino in Trustees of Rutgers College in N.J. v. Richman, *426 41 N.J. Super. 259 (Ch. Div. 1956), and need not be repeated here. Shortly after that opinion was rendered the Rutgers Trustees voted to reorganize under the above act. This then brought about the following important changes in the relationship between Rutgers and the State:
(a) The theretofore private governing board, the Board of Trustees, yielded virtually all management, control, administration and policy-making functions to a newly created and publicly controlled Board of Governors, 6 of whose 11 voting members (majority control) are now appointed by the Governor of the State of New Jersey, with the advice and consent of the Senate. N.J.S.A. 18A:65-12, 14 (emphasis added);
(b) Rutgers' facilities and assets remained impressed with a public trust, their beneficial use being reserved for the higher education of New Jersey residents, and as the instrumentality of the State for the purpose of operating the State University. The corporation retains the legal title N.J.S.A. 18A:65-2;
(c) the private board of Trustees gave up most of its powers, retaining only:
(1) the power to manage and invest private assets or private gifts, with income therefrom channeled to the Board of Governors;
(2) the power to appoint 5 of the 11 voting members of the Board of Governors, and
(3) an "advisory capacity" status (N.J.S.A. 18A:65-13, 15, 26), coupled with a right to withdraw the private assets should they be improperly applied by the Board of Governors or should insufficient state appropriations be forthcoming (N.J.S.A. 18A:65-27).
Contemporaneous with assumption by the State of New Jersey of effective control or hegemony over the University (after the Trustees' acceptance of the reorganization plan, N.J.S.A. 18A:65-37), the State undertook a massive annual funding program subsidizing in great part the school's operating budget and providing the bulk of its construction *427 costs. This financial lifeline has grown: 1956: $10,356,303 appropriation for operating costs and $800,000 appropriation for capital construction; 1965: $24,537,924 appropriation for operating costs and $1,250,000 appropriation for capital construction; 1966: $28,816,161 appropriation for operating costs and $3,705,000 appropriation for capital construction; 1967: $33,696,587 appropriation for operating costs and $9,189,000 appropriation for capital construction; 1969: $39,292,265 appropriation for operating costs and $8,650,000 appropriation for capital construction; 1970: $47,319,840 appropriation for operating costs and $27,278,000 appropriation for capital construction.
From 1956 to June 30, 1969 Rutgers had an authorized building program in the total amount of $363,441,622. Of that sum, $191,409,841 has come from the State, as noted above. Rutgers has or will supply $85,422,953 from its own money or through borrowing, and the balance of $86,608,828 has or will come from other sources, including the Federal Government and private gifts.
Since 1956 eight buildings having a total cost of $31,145,898, were or are being built entirely without state funds, and only three new construction projects, with a cost of $1,758,449, have been entirely with state funds. During that same period there have been only six instances involving the renovation of or addition to buildings that have been financed solely with state monies, at a cost of $2,215,863. There have also been four landscaping projects with a total cost of $730,565, paid for entirely out of state funds.
The State of New Jersey, then, through the Board of Governors, controls, operates and administers Rutgers. To the extent the private Board of Trustees, because of reserved powers, acts in concert or in partnership with the State in this endeavor, it is a very limited partner with very limited inconsequential leverage. In short, Rutgers' merger into the State and its assumption of state agency or state alter ego status is undisturbed thereby. That the Board of Trustees retains a partial private character is not denied.
*428 The limited supervisory powers of the State Board of Education (now the Board of Higher Education) were continued (N.J.S.A. 18A:65-7) but were not extended.
As a result, a very unique type of corporate structure was created.
Rutgers was not specifically given the power of eminent domain and may not create a debt of the State in borrowing money, N.J.S.A. 18A:65-8 and 18A:65-25(e). It is exempt from the Civil Service Law, N.J.S.A. 18A:65-25(i).
Rutgers argues that the 1956 act was a compact between the State and the University and contained all of the provisions governing the operation and control of Rutgers intended by both the State and the Board of Trustees to be applicable to it. It further contends that provisions, other than those of general application, not contained in the act, do not apply to it except for those statutes specifically applicable at the time of the act's adoption, which were incorporated therein by its "existing provisions of law clause" (N.J.S.A. 18A:65-4) unless inconsistent therewith (N.J.S.A. 18A:65-9.1). None of the three statutes with respect to public bidding and here under consideration were specifically mentioned in the 1956 act. Accordingly, Rutgers contends that it is not subject to those statutes or any statutes applicable to state or public agencies unless the provisions were specifically incorporated therein.
It should be noted that the act of 1956 grants to the Board of Governors broad powers of authority and responsibility N.J.S.A. 18A:65-25. This section provides in part as follows:
The board of governors shall have general supervision over and be vested with the conduct of the university. It shall have the authority and responsibility to:
* * * * * * * *
b. Study the educational and financial needs of the university, annually acquaint the governor and legislature with the condition of the university, and prepare and, jointly with the board of *429 higher education, present the annual budget to the governor and legislature, in accordance with law;
c. Disburse all moneys appropriated to the university by the legislature, moneys received from tuition, fees, auxiliary services and other sources, and from or by direction of the board of trustees;
d. Direct and control the expenditures of the corporation and the university in accordance with the appropriation acts of the legislature, and, as to funds received from the trustees and other sources, in accordance with the terms of any applicable trusts, gifts, bequests, or other special provisions. All accounts of the university shall be subject to post audit by the state;
e. Borrow money for the needs of the corporation and the university, as deemed requisite by the board, in such amounts and for such time and upon such terms as may be determined by the board, with the consent and advice of the board of trustees; provided, that no such borrowing shall be deemed or construed to create or constitute a debt, liability, or a loan or pledge of the credit, or be payable out of property or funds (other than moneys appropriated for that purpose) of the state;
f. 1. Purchase all lands, buildings, equipment, materials and supplies; and
2. Employ architects to plan buildings; secure bids for the construction of buildings and for the equipment thereof; make contracts for the construction of buildings and for equipment; and supervise the construction of buildings; * * *
Rutgers further argues that the power to secure bids and make contracts is clear and unmistakable. At the time of the enactment of the 1956 act, Rutgers was not subject to the public bidding statutes because it was a purely private body selling educational services to the State. Not having been subject to those statutes, and because a provision is contained in the act on the specific subject, which provision does not incorporate the public bidding statutes, the freedom of Rutgers from the provisions of Title 52 was not altered by the 1956 Act.
If the intent had been to incorporate the public bidding statutes into the 1956 act, the Legislature would have done so expressly. As stated in Garden State Parkway Employees Union v. N.J. Highway Authority, 105 N.J. Super. 168, 171 (App. Div. 1969), "It is to be noted that whenever the Legislature intended to include authorities within the ambit of certain legislation, it expressly so provided."
*430 A specific example can be found in the statute establishing the New Jersey Medical School, which was purchased by the State from Seton Hall University. The following provision appears therein:
The college in entering into any purchases, contracts or agreements shall be subject to the provisions of P.L. 1954, chapter 48 [N.J.S.A. 52:34-6] and all amendments and supplements thereto. [N.J.S.A. 18A:64C-12]
A review of the file of the then counsel to the Governor has produced two memoranda expressly considering the question whether Rutgers, subsequent to the enactment of the 1956 act, would be bound by the provisions of the public bidding statutes. Those memoranda indicate that the University would not be bound.
In a memorandum dated May 4, 1956 from Robert L. Finley, Deputy State Treasurer, to Joseph Weintraub, Esq., then counsel to the Governor, the following was stated:
B. Situation under S-167

(1) S-167 if enacted, will make entirely plain that the State has no function with respect to purchasing or construction. Thus Section 20 (6) provides that the Board of Governors shall have authority and responsibility to:
(a) Purchase all lands, buildings, equipment, materials and supplies, and
(b) Employ architects to plan buildings; secure bids for the construction of buildings and for the equipment thereof; make contracts for the construction of buildings and for equipment; and supervise the construction of buildings.
C. Comments

(1) I do not believe the State should insist on continuing to exercise the construction functions, for which it has no clear authority at present. However, if the State is to have no function in purchases and construction, it is suggested that there be written into the bill a requirement comparable to Chapter 48, P.L. 1954 with respect to competition and public advertising.
In a memorandum dated May 14, 1956 from Joseph Weintraub, Esq. to then Governor Robert B. Meyner, it was stated:

*431 (1) The overall thesis of the bill is essentially this. There will be 2 boards within the existing Corporation: (1) Board of Governors, and (2) Board of Trustees. The Board of Governors will have control over the institution, that is to say, the University. The University as used in the bill is a functional concept embracing the colleges, the courses of instruction, etc. The Board of Trustees retain control over the privately-held assets only, and will make those assets and the income from those assets available to the Board of Governors for the operation of the University. The Board of Trustees will have authority to meet the expenses of their own trusteeship, turning over the net income to the Board of Governors.
The approach of the bill is to vest the greatest right of self-government in the two boards.
Attached hereto are memorandums of other departments with respect to whether general State laws applicable to State government will apply to Rutgers if this bill is enacted. The situation may be summarized as follows: * * *
(2) As to fiscal matters, control is presently exercised only with respect to capital improvements on line items, Purchasing handling such matters. Under this bill that element of control will not be present. All purchasing will be left with the Board of Governors. There will be no requirement as to competitive bidding. [Emphasis added]
In view of the contemporaneous statements of one of the co-draftsmen of the 1956 act and the absence of language comparable to that used for the New Jersey Medical School, Rutgers argues that the Board of Governors was intentionally given the unfettered right to secure bids for the construction of buildings without the need to adhere to the public bidding statutes.
Rutgers has indicated that it has no present intention of abandoning public competitive bidding procedures, but it does contend that it is not bound by N.J.S.A. 52:34-6 et seq.
In answer to these contentions, the State argues that financial support flows from the Legislature to Rutgers in such torrents as to defray a large part of the operating costs of the University as well as a substantial percentage of its capital construction costs; that the State of New Jersey, in short, effectively pays for the operation and expansion *432 of Rutgers University. Where state tax money (legislative appropriations) covers in whole or in part construction expenses of state agencies, as with Rutgers, prima facie the trinity of public bidding statutes (public advertisement, prequalifications, single and multiple competitive bids) must and should apply, for it is their function to protect the public fisc, to ensure that in letting public construction contracts to be paid for in whole or in part by the taxpayers' money, these funds will be used prudently and frugally, and that favoritism will not be shown unqualified contractors. See Hillside Tp., Union County v. Sternin, 25 N.J. 317, 322 (1957).
The State further alleges that control and financial support are the crucial criteria for determining state agency status of an instrumentality of State Government and tested by these standards Rutgers plainly is a state agency and therefore subject to the pertinent provisions of Title 52.
In furtherance of his argument the Attorney General says that truly autonomous state instrumentalities such as the New Jersey Turnpike Authority, N.J.S.A. 27:23-1 et seq, are properly designated thus because their operations and construction are financed not by public tax moneys (legislative appropriations) but rather by revenues from toll exactions and independently issued bonds, N.J.S.A. 27:23-5.7. Such entities have, in the past, been exempted from compliance with public bidding statutes for the very reason that their source of operating and construction income is not public tax money. See Kingston Bituminous, etc. v. N.J. Turnpike Authority, 80 N.J. Super. 25, 32 (App. Div. 1963). Yet, even with respect to the Turnpike Authority, the Legislature, recognizing that this body was affected with a public interest, recently imposed public bidding requirements upon it. N.J.S.A. 27:23-6.1. Rutgers, unlike instrumentalities such as the Turnpike Authority, operates and builds largely with public tax moneys, and therefore is not "autonomous" within Kingston, supra, and *433 is not reasonably to be relieved from the bidding statutes by any analogy to the Turnpike Authority.
The State rejects Rutgers' contention that because it does not enjoy the privileges generally granted to other state agencies, it is not the State or an agency thereof.
The Attorney General further argues that it is of no moment, for purposes of determining Rutgers' freedom from Title 52, that the Rutgers act of 1956 does not expressly incorporate and apply the bidding statutes to the University. First there is nothing to indicate application of the maxim expressio unius, i.e., that all regulations which might touch Rutgers are set out in the act and that those not set out are by implication inapplicable. For example, Rutgers as a spending agency, is subject to the Governor's powers to withhold appropriations, N.J.S.A. 52:27B-31, notwithstanding no such reference thereto is made in the Rutgers act. Second, expressio unius, as a doctrine of statutory construction, should be used very carefully, cautiously and sparingly. See Crawford, Statutory Construction, § 195, at 337 (1940). Third, in contrast to the above rule of construction, it is an equally well if not more respected rule of statutory interpretation that statutes are to be construed not in isolation but by reference to other laws of the State bearing on the same subject.
The Attorney General further contends that Rutgers' prima facie subjection to the public competitive bidding and prequalification provisions of Title 52 remains undisturbed, and thus rejects any of the remaining reasons which it has advanced. In support of this position he says that Rutgers' argument that the fact that privileges generally enjoyed by state agencies, which, it is claimed, are not enjoyed by Rutgers, and thus proves that Rutgers is not the State or a state agency, is misdirected.
Many of the arguments now advanced by both sides must be discarded as they do not fit the admitted facts as they existed in 1956 at the time the Rutgers, the State University *434 Law was being considered by the Legislature, the Governor and their advisors.
Obviously, this was not a hasty considered place of legislation. The State had been wrestling with the higher education problem for many years. A sound and lasting solution was needed and the situation had long been discussed and weighed by the State, the public and Rutgers Trustees.
The record is clear that the very problem now before this court (as well as others) was carefully and thoroughly gone into before the legislation was adopted and the measure signed by the Governor. (See Finley memo and Weintraub, opinion, above.) It must be kept in mind that this legislation, unlike most, was quite unique and was not only being adopted for the benefit of the State and its citizens but also with the full knowledge that the then Board of Trustees of Rutgers would have to be satisfied therewith; otherwise it would not in all probability be ratified and the intended partnership between the State and the University Trustees would never have come into existence.
That all relied heavily upon the opinion of the Governor's counsel is obvious. This opinion was not only clear and to the point but correctly interpreted the language of the then pending measure.
Legislative intent can be determined by several methods well known to the law but none could hardly be more positive than the reliance by the Legislature, the Governor and the University to be affected upon the clear and unambiguous language of the act itself, coupled with the recorded opinion of the scrivener and counsel.
So here we have three controlling factors; first, the plain language of the act; second, the lucid opinion relied upon by the State and its partners to be, and third, the intended purpose of the legislation.
I must therefore conclude that Rutgers is not bound by any of the bidding statutes in question.
A judgment will be entered accordingly.