Richard E. REHBERG

*v.*

**GLASSBORO STATE COLLEGE and Alpha Phi Delta and Sigma Phi Epsilon and Department of Higher Education and State of New Jersey Office of Attorney General.**

Civ. A. No. 88-7673.

United States District Court, E.D. Pennsylvania.

Sept. 6, 1990.

Daniel J. Zucker, Barry F. Penn, Philadelphia, Pa., for Richard E. Rehberg.

Peter N. Perretti, Jr., Trenton, N.J., for Glassboro State College.

Natale F. Carabello, Jr., Philadelphia, Pa., for Alpha Phi Delta.

John J. Hatzell, Jr., Philadelphia, Pa., for Sigma Phi Epsilon.

John M. Armstrong, Deputy Atty. Gen., Trenton, N.J., for State of N.J.

## MEMORANDUM

WALDMAN, District Judge.

This is a suit against Glassboro State College ("Glassboro") and certain Glassboro fraternities. Plaintiff alleges that the fraternities' unlawful serving of alcohol to him at age 19 proximately caused him to drive into a tree and injure himself. Presently before the court is Glassboro's motion for summary judgment on grounds of Eleventh Amendment sovereign immunity.

### I. *Standard*

Summary judgment may be entered pursuant to Fed.R.Civ.P. 56(c) when the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party moving for summary judgment bears the initial burden of demonstrating the absence of a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Following such a showing by a defendant-movant, the plaintiff must by affidavits, depositions or admissions "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Id.* at 322, 106 S.Ct. at 2552.

### II. *Discussion*

The Eleventh Amendment to the United States Constitution states:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State.

This amendment has been interpreted as immunizing a state from suits brought in federal court by its own citizens as well as by citizens of another state. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984). If the state itself is not named as a party, the suit may still be barred if the state is the real party in interest. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974).

In *Urbano v. Board of Managers of New Jersey State Prison,* 415 F.2d 247 (3d Cir. 1969), *cert. denied,* 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 129 (1970), the Third Circuit Court of Appeals listed nine factors that should be considered when determining if an entity is part of the state for purposes of Eleventh Amendment immunity. These were as follows:

(1) How state law treats the agency generally;

(2) Whether the payment of the judgment will have to be made out of the state treasury;

(3) Whether the entity has the funds or the power to satisfy the judgment;

(4) Whether the entity is performing a governmental or proprietary function; [1]

---

1. The Third Circuit has held that this factor is no longer a valid criterion in light of *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 546–47, 105 S.Ct. 1005, 1015–16, 83 L.Ed.2d 1016 (1985), in which the Supreme Court rejected the proprietary-governmental distinction as a basis for determining whether states must comply with federal legislation enacted under the commerce clause. *Fitchik v. New Jersey Transit Rail Operations, Inc.,* 873 F.2d 655, 659 n. 2 (3d Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989).

(5) Whether the entity has been separately incorporated;

(6) Whether the entity exercises relative autonomy over its operations;

(7) Whether the entity has the power to sue and be sued and to enter into contracts;

(8) Whether the entity's property is immune from state taxation; and,

(9) Whether the sovereign has immunized itself from responsibility for the agency's operations.

*Id.* at 251–52.

Because several of these are interrelated, the Third Circuit Court of Appeals en banc recently reorganized the *Urbano* factors for clarity's sake into three broad categories. *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989). These are as follows:

(1) Whether the money that would pay the judgment would come from the state (*Urbano* factors 2, 3 and 9);

(2) The status of the agency under state law (*Urbano* factors 1, 5, 7 and 8); and,

(3) What degree of autonomy the agency has (*Urbano* factor 6).

*Id.* The *Fitchik* court further noted that, while the most important *Urbano* factor is whether any judgment would be paid from the state treasury, no single factor is dispositive. *Id.* See also *Edelman v. Jordan, supra,* 415 U.S. at 663–66, 94 S.Ct. at 1355–57 (damages from state treasury unrecoverable in official capacity suit against state officer). The court now turns to an examination of how these factors bear on Glassboro's assertion of immunity.

### III. *Funding*

In support of its motion for summary judgment, Glassboro submitted the affidavit of Lawrence Reader, Vice–President for Administration and Finance at Glassboro. Mr. Reader therein states, *inter alia,* that (1) any judgment rendered against Glassboro would be paid directly from the State Treasury through the State Tort Claims Fund; (2) although Glassboro receives some funds from outside sources through tuition, grants and alumni contributions, over 70 percent of the regular operating budget and 50 percent of the total operating budget comes directly from the State Treasury; and, (3) Glassboro has set aside no funds to meet its liabilities for injury and damage claims.

The Third Circuit has held that the payment of a judgment should not be viewed as coming from the state if the entity in question has the ability to pay the judgment. *Kovats v. Rutgers, The State University,* 822 F.2d 1303, 1308 (3d Cir.1987). In holding that Rutgers was not entitled to Eleventh Amendment immunity, the Court in *Kovats* noted that, like Glassboro, Rutgers had other sources of income than state funding.[2] The court also noted that, like Glassboro, Rutgers was subject to the New Jersey Tort Claims Act. *Id.* at 1311. The court further pointed out that a judgment rendered against Rutgers could be paid out of non-state funds in both segregated and commingled accounts under Rutgers' discretionary control.

In examining the funding issue, the court can find no practical distinction between this case and *Kovats.* In addition to the similarities mentioned, Mr. Reader testified at his deposition that, like Rutgers, state funds to Glassboro are commingled in the same bank account with income from other sources. (Reader Deposition, at 30). 822

---

**2.** *Kovats* is the only case to date involving a New Jersey state university's claim of sovereign immunity. The Third Circuit has held that Pennsylvania state colleges and the Pennsylvania State System of Higher Education are immune from suit. *See Skehan v. State System of Higher Education,* 815 F.2d 244, 249 (3d Cir. 1987); *Skehan v. Board of Trustees of Bloomsburg State College,* 538 F.2d 53, 62 (3d Cir.) (en banc), *cert. denied,* 429 U.S. 979, 97 S.Ct. 490, 50

L.Ed.2d 588 (1976). In the context of § 1983 actions, the University of Delaware, Temple, the University of Pittsburgh and Penn State have been held not to be immune. *See Gordenstein v. University of Delaware,* 381 F.Supp. 718, 722 (D.Del.1974); *Samuel v. University of Pittsburgh,* 375 F.Supp. 1119, 1125–28 (W.D.Pa.1974), *aff'd in part, rev'd in part on other grounds,* 538 F.2d 991 (3d Cir.1976).

F.2d at 1309. Thus, notwithstanding Mr. Reader's blanket assertion in his affidavit, it remains uncertain whether the payment of a judgment, coming from a commingled bank account, would necessarily consist of state funds. Further, while Glassboro's proportionate share of state funding may be larger than that of Rutgers, it appears that satisfaction of a judgment with non-state funds would be possible, if onerous.

## IV. *Status*

The central inquiry in examining Glassboro's legal status is whether state law regards the entity as independent or, rather, as a surrogate of the state itself. *Fitchik, supra,* 873 F.2d at 662. In addressing the status of the New Jersey Transit Authority ("NJT") and Rutgers in *Fitchik* and *Kovats,* respectively, the Court of Appeals considered such characteristics as whether the public entity in question (1) had the power of eminent domain; (2) was separately incorporated; (3) had the power to sue and be sued; (4) had the power to enter contracts; and, (5) was subject to the New Jersey Administrative Procedure Act, 52:14B–1 *et seq.,* the New Jersey Tort Claims Act, N.J.S.A. 59:1–1 *et seq.,* and the New Jersey Contractual Liability Act, N.J.S.A. 59:13–1 *et seq.*

An examination of these characteristics in the present case demonstrates that Glassboro is more of an official entity and effective arm of the state than is either Rutgers or NJT. Glassboro has the power of eminent domain, is not separately incorporated, cannot sue and be sued, and is immune from all state taxation. Further, while the state recently has given Glassboro, like Rutgers and NJT, the power to enter into contracts without state approval, the state has retained liability for any contractual debt accruing against Glassboro. N.J.S.A. 59:13–1 *et seq.* On balance, Glassboro's status under state law weighs significantly in favor of granting Eleventh Amendment immunity.

## V. *Autonomy*

The third factor, Glassboro's relative autonomy, weighs substantially in favor of considering Glassboro an arm of the state for purposes of Eleventh Amendment immunity.

The uncontroverted evidence of record establishes that the State of New Jersey retains significant control over Glassboro's internal structure. The University's Board of Trustees are appointed by the State Board of Higher Education and are subject to gubernatorial veto. University trustees are forbidden to serve more than two six-year terms. Glassboro can set its tuition only within the parameters set by the Department of Higher Education. N.J.S.A. 18A:14–1. Glassboro, like all state colleges, is bound by state regulations regarding student admissions, degree requirements, personnel policies, tenure, reduction in force and student participation as trustees. N.J.S.A. 9:6–1 *et seq.* Moreover, unlike Rutgers, Glassboro is bound by the Administrative Procedure Act, Civil Service Rules and Regulations, and competitive bidding statutes. *Kovats, supra,* 822 F.2d at 1310; N.J.S.A. 18A:65–25(i); *Rutgers, State University v. Kugler,* 110 N.J.Super. 424, 434, 265 A.2d 847 (Law Div.1970).

## VI. *Conclusion*

On the record before the court, it appears that the relative weight of the relevant criteria augurs in favor of granting Glassboro Eleventh Amendment immunity. This result is consistent with *Kovats* in which the Court recognized that "[e]ach state university exists in a unique governmental context, and each must be considered on the basis of its own peculiar circumstances." 822 F.2d at 1312 (*quoting Soni v. Board of Trustees of the University of Tennessee,* 513 F.2d 347, 352 (6th Cir.1975), *cert. denied,* 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976)). Glassboro's status under state law and relative lack of autonomy differ substantially from that of Rutgers. Rather than being separately incorporated, Glassboro is a division of the State of New Jersey. (Reader Deposition, at 44). Unlike Rutgers, Glassboro does not have the power to sue and be sued and is subject to the protection of the Contractual Liability Act. Unlike Rutgers, Glassboro is subject to the provisions of the Administrative Procedure Act, Civil Service Rules and Regulations, and competitive bidding statutes.

The court concludes that Glassboro is among the great majority of public colleges and universities which have been held entitled to sovereign immunity. *See Hall v. Medical College of Ohio,* 742 F.2d 299, 301–02 (6th Cir.1984), and cases cited therein.[3]

VII. *Plaintiff's Request for Transfer*

■ Plaintiff requests that if the motion to dismiss Glassboro is granted, the court order that this action either be transferred to a Pennsylvania state court pursuant to 42 Pa.C.S.A. § 5103(b) or be "consolidated" with plaintiff's related action pending in a New Jersey state court. This court is not at liberty to do either. *See Greenfield v. Heublein, Inc.,* 742 F.2d 751 (3d Cir.1984), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1189, 84 L.Ed.2d 336 (1985); *McLaughlin v. ARCO Polymers, Inc.,* 721 F.2d 426, 430–31 (3d Cir.1983). *See also Weaver v. Marine Bank,* 683 F.2d 744, 751–52 (3d Cir. 1982) (Sloviter, J., dubitante).

Plaintiff has cited no statutory or other authority for the transfer of this action to a New Jersey state court, let alone for this court to order the New Jersey court to consolidate this case with plaintiff's parallel case pending there.

An appropriate order will be entered.

### ORDER

AND NOW, this 6th day of September, 1990, upon consideration of defendant Glassboro State College's motion to dismiss plaintiff's complaint on grounds of Eleventh Amendment immunity, and plaintiff's response thereto, IT IS HEREBY ORDERED that the motion is GRANTED and that the complaint is DISMISSED as to defendant Glassboro State College only. Plaintiff's request that the court transfer this action to a state court in Pennsylvania or New Jersey is DENIED.

---

**3.** Although a state can consent to suit against it in federal court, *see, e.g., Edelman v. Jordan, supra,* plaintiff here does not argue that the State of New Jersey has waived its Eleventh Amendment immunity.