**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1159-16T2

THOMAS W. KENYON,

    Plaintiff-Appellant,

v.

RUTGERS, THE STATE UNIVERSITY OF
NEW JERSEY, BRUCE FEHN, Senior
Vice President of Administrative
Services, individually and in
his official capacity, and
NATALIE HOROWITZ, Executive
Director of Purchasing,
individually and in her official
capacity,

    Defendants-Respondents.

_____

Argued April 18, 2018 — Decided June 19, 2018

Before Judges Koblitz, Manahan, and Suter.

On appeal from Superior Court of New Jersey,
Law Division, Middlesex County, Docket No. L-
5377-14.

Mark A. Gulbranson, Jr. argued the cause for
appellant (Hartman, Chartered, attorneys;
Katherine D. Hartman and Mark A. Gulbranson,
Jr., on the brief).

John K. Bennett argued the cause for
respondents (Jackson Lewis P.C., attorneys;
John K. Bennett and Carla D. Macaluso, of

counsel and on the brief; Beth L. Braddock, on the brief).

PER CURIAM

Plaintiff Thomas W. Kenyon filed a September 3, 2014 complaint against defendants Rutgers University, Bruce Fehn, and Natalie Horowitz for violations of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. Plaintiff claims he complained to his superiors about Rutgers' procurement methods, alleging that he reasonably believed Rutgers was subject to state procurement laws, and in the alternative, that he reasonably believed Rutgers' procurement methods violated public policy because they breached its fiduciary duty to taxpayers. Plaintiff claims Rutgers retaliated and subsequently terminated plaintiff's employment because he objected to Rutgers' procurement methods. On October 14, 2016, the court granted defendants' summary judgment motion and denied plaintiff's discovery motion, which sought to depose two additional witnesses and obtain an expert on state procurement law. Plaintiff appeals and we reverse and remand for the court to state its reasons for its decisions.

Defendants filed an initial motion for summary judgment on April 29, 2016. On June 10, 2016, the court entered a Case Management Order (CMO) extending the discovery end date to September 15, 2016, and postponing the trial date to October 31, 2016. Defendants renewed their motion for summary judgment on

September 2, 2016, seeking to dismiss plaintiff's claim in its entirety.

On September 13, 2016, plaintiff filed a notice of motion to extend the discovery date for an additional sixty days to obtain a procurement expert and to depose two additional witnesses. The trial court subsequently entered orders granting defendants' summary judgment motion and denying plaintiff's motion to extend discovery. A handwritten note on the summary judgment order states that "a written opinion will be issued as soon as possible." The trial court stated on the record that a written opinion would follow explaining its findings and reasons for the summary judgment decision. The order denying further discovery indicated reasons were placed on the record, although they were not. No written opinion was issued with regard to either order.

Plaintiff began his employment with the University of Medicine and Dentistry of New Jersey (UMDNJ) in October 2006. He was appointed to the position of Vice President, Supply Chain Management on May 30, 2007. Plaintiff stated that in 2006 or 2007, a Federal Monitor assigned to oversee the UMDNJ procurement department restructuring told plaintiff that Rutgers was required to follow state procurement laws. Rutgers is actually exempt from the Public Contracts Law, N.J.S.A. 52:34-1 to -25.1 See Rutgers, the State Univ. v. Kugler, 110 N.J. Super. 424, 434 (Law Div.

A-1159-16T2

1970), aff'd, 58 N.J. 113 (1971). Plaintiff claims he only became aware of this exception after he filed this lawsuit.

In or around June or July 2012, plaintiff became aware of the pending merger of UMDNJ into Rutgers. Defendant Bruce Fehn stated that Rutgers handled the assimilation related to the merger and that Rutgers' management made the ultimate decisions regarding the merger. Rutgers retained PricewaterhouseCoopers (PwC) to serve as a consultant and facilitate pre-merger meetings. Rutgers' procurement policies and systems were determined to be the controlling policies and applicable operating systems in the post-merger institution.

After the merger was announced, pre-merger meetings were held twice a week between plaintiff, PwC consultants, which included Christina Sherma, and the then-Director of Purchasing for Rutgers, defendant Natalie Horowitz. It was at these meetings that plaintiff states he expressed his concerns to Horowitz about Rutgers' procurement policies and objected to Rutgers' lack of advertised bidding and centralized procurement. Plaintiff claims that after he voiced these concerns, he was no longer invited to these pre-merger meetings beginning in February or March 2013. When plaintiff asked why he was not being included in the meetings, Horowitz stated that he was "so far advanced" and the group was meeting to focus on Rutgers. Plaintiff was not yet a Rutgers

employee at the time. He did not tell Horowitz that he believed Rutgers' procurement process was illegal or unlawful, but plaintiff says he told Horowitz he believed the lack of centralization in procurement led to misappropriation of taxpayers' funds.

On July 1, 2013, the majority of UMDNJ merged into Rutgers pursuant to the New Jersey Medical and Health Sciences Education Restructuring Act, N.J.S.A. 18A:64M-1 to -43. As a result, the UMDNJ and Rutgers' procurement departments merged, leaving only one position available for Executive Director of Procurement for Rutgers. Fehn, as Rutgers' Senior Vice President of Administration, chose Horowitz to be the Executive Director for Procurement, because of Horowitz's familiarity with Rutgers' systems.

As a result of the merger, plaintiff became a Rutgers employee: the Associate Director of Strategic Sourcing in the procurement department. Plaintiff reported directly to Horowitz and was responsible for twelve employees. Plaintiff's new position paid $112,000, significantly less than his $190,000 salary at UMDNJ. After becoming a Rutgers employee, Horowitz expressed concern to plaintiff about his job performance.

On October 4, 2013, plaintiff took a medical leave of absence. Rutgers approved plaintiff's medical leave request through January

3, 2014, but notified plaintiff that pursuant to Rutgers' policy, a medical leave could not exceed six months within a rolling twelve-month period. Plaintiff requested extensions on his medical leave, which were granted through April 4, 2014. After being advised that no additional leave was available, he did not return to work and submitted a "Certification of Health Care Provider" advising that the probable duration of incapacity was one year. Rutgers denied the additional leave time and subsequently terminated plaintiff on April 21, 2014. Plaintiff stated that the reason for his medical leave was due to the toxic work environment created by Horowitz and Fehn, causing plaintiff to suffer anxiety, high blood pressure and severe headaches.

CEPA is a "remedial legislation entitled to liberal construction, its public policy purpose to protect whistleblowers from retaliation by employers having been long recognized by the courts of this State." Lippman v. Ethicon, Inc., 222 N.J. 362, 378 (2015). CEPA's legislative purpose is to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." Ibid. (quoting Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 431 (1994)).

To establish a prima facie case for a cause of action under CEPA, a plaintiff must show:

A-1159-16T2

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;
>
> (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c);
>
> (3) an adverse employment action was taken against him or her; and
>
> (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> [Lippman, 222 N.J. at 380 (quoting Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003)).]

"A plaintiff who brings a claim pursuant to N.J.S.A. 34:19-3(c) need not show that his or her employer or another employee actually violated the law or a clear mandate of public policy." Dzwonar, 177 N.J. at 462. Instead, the plaintiff "must show that he or she 'reasonably believes' that to be the case." Ibid. (quoting Estate of Roach v. TRW, Inc., 164 N.J. 598, 613 (2000)). The goal of CEPA is "not to make lawyers out of conscientious employees but rather to prevent retaliation against those employees who object to employer conduct that they reasonably believe to be unlawful or indisputably dangerous to the public health, safety or welfare." Id. at 464 (quoting Mehlman v. Mobil Oil Corp., 153 N.J. 163, 193-94 (1998)). But a plaintiff "must set forth facts that would support an objectively reasonable belief that a violation has occurred." Ibid.

"[W]hen a plaintiff brings an action pursuant to N.J.S.A. 34:19-3(c), the trial court must identify a statute, regulation, rule, or public policy that closely relates to the complained-of conduct." Id. at 463. Regarding a summary judgment motion, "when a defendant requests that the trial court determine as a matter of law that a plaintiff's belief was not objectively reasonable, the trial court must make a threshold determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff." Id. at 464. A trial court "can and should enter judgment for a defendant when no such law or policy is forthcoming." Dzwonar, 177 N.J. at 463.

The elements of a CEPA claim that a plaintiff must prove differ slightly between N.J.S.A. 34:19-3(c)(1) and (3):

> While an employee who proceeds under [N.J.S.A. 34:19-3(c)(1)] must show that he or she reasonably believed that the employer's activity, policy, or practice "violated" a law, rule, or regulation, an employee who proceeds under [N.J.S.A. 34:19-3(c)(3)] is only required to show that the employer's activity, policy, or practice is "incompatible" with a clear mandate of public policy.
>
> [Maimone v. City of Atl. City, 188 N.J. 221, 230-31 (2006).]

But "a plaintiff who pursues a CEPA claim under [N.J.S.A. 34:19-3(c)(3)] may rely upon the same laws, rules and regulations that

may be the subject of a claim under [N.J.S.A. 34:19-3(c)(1)]." Id. at 231. A plaintiff who proceeds under N.J.S.A. 34:19-3(c)(3), however, "must make the additional showing that the 'clear mandate of public policy' he or she reasonably believes the employer's policy to be incompatible with is one that 'concerns the public health, safety or welfare . . . .'" Ibid. (quoting Roach, 164 N.J. at 609-11). Whether an employee has adequately "established the existence of a clear mandate of public policy is an issue of law." Dzwonar, 177 N.J. at 469 (quoting Mehlman, 153 N.J. at 187).

Once a plaintiff establishes a prima facie CEPA claim, a defendant must then "come forward and advance a legitimate, nondiscriminatory reason for making the adverse decision." Kolb v. Burns, 320 N.J. Super. 467, 479 (App. Div. 1999). "If such reasons are proffered, plaintiff must raise a genuine issue of material fact regarding whether the employer's proffered explanation is pretextual or whether, the 'retaliatory discrimination was more likely than not a determinative factor in the decision.'" Ibid. (quoting Bowles v. City of Camden, 993 F. Supp. 255, 262 (D. N.J. 1998)). "Pretext is 'a purpose or motive alleged or an appearance assumed in order to cloak the real intention or state of affairs;' in essence, pretext is a 'cover-

up' for a discriminatory purpose." Bowles, 993 F. Supp. at 262

(quoting Loeb v. Textron, 600 F.2d 1003, 1012 (1st Cir. 1979)).

Rule 4:24-1(c) provides in pertinent part that "[n]o extension of the discovery period may be permitted after an arbitration or trial date is fixed, unless exceptional circumstances are shown." To extend discovery based on exceptional circumstances, a moving party must show:

> (1) why discovery has not been completed within time and counsel's diligence in pursuing discovery during that time; (2) the additional discovery or disclosure sought is essential; (3) an explanation for counsel's failure to request an extension of the time for discovery within the original time period; and (4) the circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time.
>
> [Castello v. Wohler, 446 N.J. Super. 1, 25 (App. Div. 2016) (quoting Rivers v. LSC P'ship, 378 N.J. Super. 68, 79 (App. Div. 2005)).]

The trial court must provide reasons with its decisions, either on the record or written. As we said more than twenty years ago,

> Unfortunately, the judge made no findings of fact or legal conclusions as required by R. 1:6-2(f). An articulation of reasons is essential to the fair resolution of a case. A trial judge has a duty to make findings of fact and conclusions of law "on every motion decided by written orders that are appealable as of right." R. 1:7-4. Failure to perform this duty "'constitutes a disservice to the litigants, the attorneys and the appellate

10

court.'" <u>Curtis v. Finneran</u>, 83 N.J. 563, 569-70 (1980) (quoting <u>Kenwood Assocs. v. Board of Adjustment of Englewood</u>, 141 N.J. Super. 1, 4 (App. Div. 1976)); <u>see id.</u> at 570 ("Naked conclusions do not satisfy the purpose of <u>R.</u> 1:7-4.").

[<u>Italiano v. Rudkin (Italiano)</u>, 294 N.J. Super. 502, 505 (App. Div. 1996).]

"Moreover, the appellate court ordinarily cannot perform its review function in the absence of findings." <u>Filippone v. Lee</u>, 304 N.J. Super. 301, 306 (App. Div. 1997). Although we review the grant of a motion for summary judgment de novo, we cannot review the decision of the trial court on a blank slate. <u>Estate of Doerfler v. Fed. Ins. Co.</u>, ___ N.J. Super. ___, ___ (App. Div. 2018) (slip op. at 5). Here, although the court gave some brief explanation of its decision on the record, finding no evidence of whistle-blowing activity, the court explicitly stated it anticipated written reasons would follow within two weeks of oral argument. Counsel represented to us that he reached out to the court for the reasons without success. We also were unsuccessful in obtaining the promised written reasons. Thus, we are constrained to remand to give the court an opportunity to reconsider and provide reasons for both orders.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1159-16T2